**In the Matter of An INVESTIGATION PURSUANT TO the CLEAN AIR ACT, 42 U.S.C. §§ 7401 et seq.**

**In re BUNKER HILL MINING AND SMELTER COMPLEX, Located in Shoshone County, Near the Towns of Kellogg and Smelterville, Idaho.**

No. MS–3623.

United States District Court, D. Idaho.

Jan. 11, 1990.

Leslie R. Weatherhead, Witherspoon, Kelley, Davenport & Toole, P.S., Spokane, Wash., Cumer Green, Green & Nyman, Boise, Idaho, for Minerals Corp. of America.

Maurice O. Ellsworth, U.S. Atty., D. Marc Haws, Asst. U.S. Atty., District of Idaho, Boise, Idaho, Richard B. Stewart, Asst. Atty. Gen., David A. Carson, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C. (Patricia A. Embrey, Office of Gen. Counsel, Justina C. Fugh, Office of Enforcement and Compliance Monitoring, U.S. E.P.A., Washington, D.C., Joan Shirley, Office of Regional Counsel, E.P.A., Region X, Seattle, Wash., of counsel), for E.P.A.

### ORDER DENYING MOTION TO QUASH AND GRANTING PROTECTIVE ORDER

RYAN, Chief Judge.

### I. FACTS

On September 5, 1989, the United States, at the request of the Administrator for the

United States Environmental Protection Agency (EPA), applied for an ex parte Administrative Warrant for Entry and Inspection. The warrant as drafted and ultimately entered, authorized the EPA *or its* authorized representative to enter and inspect the premises in and around the Bunker Hill mining and smelter complex located near Kellogg, Shoshone County, Idaho.

The administrative warrant was served on the Minerals Corporation of Idaho, Inc. (MCI), on September 6, 1989. Thereafter, MCI brought an emergency motion to stay execution on the warrant pending full briefing on questions surrounding the propriety of, and EPA's authority to use, administrative warrants to gain access to documents and records under the Clean Air Act (CAA), 42 U.S.C. §§ 7401, *et seq.* The motion for emergency stay was granted in an order dated September 8, 1989.

On September 19, 1989, MCI filed its Motion for Order Quashing Warrant or, in the Alternative, for Protective Order (motion to quash). The parties have filed extensive briefing in support of, and in opposition to, the motion to quash. Consequently, the matter is now considered ripe for decision by this court.

MCI's motion to quash raises essentially three questions: (1) whether EPA's access is limited to only those documents required to be maintained under paragraph (1) of section 7414[1]; (2) whether access and/or inspection should be by way of an adminis-trative warrant or an administrative subpoena; and (3) whether the administrative warrant is overbroad or unreasonably burdensome.

## II. ANALYSIS

1. Whether EPA's Right to Access and Inspect is Limited by the Express Provisions of the Clean Air Act.

■  Subsection 2(b) of Section 114 of the Clean Air Act, 42 U.S.C. § 7414(a)(2)(B), provides in relevant part that the Administrator or his authorized representative "may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1). . . ." 42 U.S.C.S. § 7414(a)(2)(B) (Law. Co-op.1989). MCI, citing subsection 2(B), argues that the EPA has not required it to maintain any records. Thus, MCI concludes that the EPA, having failed to require it to maintain any documents or records, has no right under the CAA to search for, access and/or inspect any documents which may be found on its premises.

The court, however, finds no basis for such a restrictive interpretation. *See e.g., Ced's, Inc. v. United States,* 745 F.2d 1092 (7th Cir.1984) (wherein the court refused to adopt a restrictive interpretation of subsection (2)(B)); *cf. Marshall v. Barlow's, Inc.,* 436 U.S. 307, 324, n. 22, 98 S.Ct. 1816, 1826, n. 22, 56 L.Ed.2d 305 (1978) (wherein

---

1. **Authority of Administrator or authorized representative.** For the purpose (i) of developing or assisting in the development of any implementation plan under section 110 or 111(d), any standard of performance under section 111, or any emission standard under section 112, (ii) of determining whether any person is in violation of any such standard or any requirement of such a plan, or (iii) carrying out any provision of this Act (except a provision of title II with respect to a manufacturer of new motor vehicles or new motor vehicle engines)—

(1) the Administrator may require any person who owns or operates any emission source or who is subject to any requirement of this Act (other than a manufacturer subject to the provisions of section 206(c) or 208 with respect to a provision of title II to (A) establish and maintain such records, (B) make such reports, (C) install, use, and maintain such monitoring equipment or methods, (D) sam-ple such emissions (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (E) provide such other information as he may reasonably require; and

(2) the Administrator or his authorized representative, upon presentation of his credentials—

(A) shall have a right of entry to, upon, or through any premises of such person or in which any records required to be maintained under paragraph (1) of this section are located, and

(B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which such person is required to sample under paragraph (1).

42 U.S.C.S. § 7414(a) (1989).

the Court concluded that Section 8(a) of the Occupational Safety and Health Act (OSHA), although not expressly addressing the matter of records, provided OSHA with the authority to review all records required to be kept by the Act and/or C.F.R. regulations and, in addition, *all other records which were directly related to the purpose of the inspection* ). Moreover, a review of the legislative history, albeit sparse, makes clear that the EPA's right of access is not so limited. *See* H.R.Rep. No. 1146, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5356, 5366 (the right to access includes the right to inspect "records, files, papers, processes, controls and facilities *relevant to compliance with the regulations." Id.* (emphasis added)).

The court agrees with *Ced's* to the extent that it refuses to strictly curtail the right of access. However, this court, unlike the court in *Ced's,* is not persuaded that the right of access extends to *"any* records of any person subject to the provisions of the CAA"; the interpretation in *Ced's* is clearly at odds with the express language of the statute itself. *See* 42 U.S.C. § 7414(a)(2)(B) (the Administrator or his authorized representative "may at reasonable times have access to and copy any records ... *required ... underparagraph (1)."* (emphasis added)). The court, upon reviewing the relevant case law and legislative history, concludes that under the CAA, the EPA's right of access is limited to those records it requires persons to maintain, those records persons are required to maintain pursuant to the C.F.R. or other applicable regulation, and all other records which were directly related to the purpose of the inspection.

2. Whether Access and Inspection Should be Achieved via Administrative Warrant or Administrative Subpoena.

■ The issue, as stated above, is whether the EPA may access records and documents by way of an administrative warrant or via administrative subpoena. Stated alternatively, the question is, whether the EPA in executing on the inspection warrant has the authority to examine *all* documents in order to discover any pertinent documents and records, or whether MCI must search its own records and files and produce to the EPA those documents and records which MCI deems to be responsive to the warrant.

The court concludes, as it did in *Bunker Ltd. Partnership v. United States,* No. 85–3133, 1985 WL 6037 (D.Idaho Dec. 6, 1985), that an inspection warrant, to the extent it authorizes access to records and documents, is more analogous to an administrative subpoena. *Id.* at 4. Consequently, MCI, rather than the EPA, is responsible for searching its documents to produce all records and documents which are responsive to the warrant.

The court bases this finding, in large part, upon the Supreme Court decision *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *See* is not directly on point. However, the dicta contained therein is instructive—particularly given the dearth of controlling case law. The Court in *See* noted that: "[t]he agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but *it must delimit the confines of a search by designating the needed documents in a formal subpoena." Id.* at 544, 87 S.Ct. at 1740 (emphasis added).

Therefore, the court finds that the administrative warrant issued in this case, but only to the extent that it authorizes access to certain records and documents, is analogous to an administrative subpoena. Accordingly, MCI, rather than the EPA, is responsible for searching its documents to produce all records and documents which are responsive to the warrant; the EPA is not entitled to review all records and documents in order to determine which it feels fall within the parameters of the warrant.

3. Whether the Administrative Warrant is Overbroad or Unreasonably Burdensome.

■ The inquiry does not end with a determination that the administrative subpoena is the proper vehicle by which the EPA may gain access to documents and

records under the CAA. Fourth Amendment concerns are also implicated. Under the Fourth Amendment, the warrant must be "sufficiently limited in scope, relevant purpose and specific in directive so that compliance will not be unreasonably burdensome." *See Id.*

In the present case, the Administrative Warrant for Inspection Entry and Investigation provides in relevant part that:

> IT IS HEREBY ORDERED AND COMMANDED that EPA, through its duly authorized representatives, the U.S. Marshall, or any other federal law enforcement officer, shall be, and is hereby, authorized and permitted ...
>
> . . . .
>
> A. TO SAMPLE AND INSPECT any and all:
>
> . . . .
>
> (5) documents, records, and/or recordations *of any type* maintained or filed anywhere in the [Bunker Hill mining and smelter complex or its offices].
>
> . . . .
>
> D. TO PHOTOCOPY (AND CARRY AWAY COPIES OF) all the documents and/or records described above or any documents responsive to EPA's August 25, 1988, Request for Information....

Administrative Warrant for Inspection Entry and Investigation, filed Sept. 5, 1989, at 1–3 (emphasis added).

The court having held above that the EPA's right of access is limited by statute to certain specified records and documents, finds that the administrative warrant is not sufficiently limited in scope and relevant purpose, i.e., the warrant authorizing access to documents and records "of any type" is unreasonably burdensome.

### III. ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that MCI's Motion for Order Quashing Warrant or, in the Alternative, for Protective Order should be, and is hereby, GRANTED in part and DENIED in part. The motion is denied to the extent that it seeks to quash the Administrative Warrant issued September 5, 1989; it is granted to the extent that it seeks a protective order limiting the EPA's right of access to certain specified records and documents by means of an administrative subpoena.

IT IS FURTHER ORDERED that MCI shall produce and make available for EPA inspection and copying all documents and records which are responsive to EPA's August 25, 1988, request for information, within thirty (30) days from the date of this order.